**UNITED STATES of America,**
**Appellee,**

v.

**Jaime RODRIGUEZ, a.k.a. "Jay", and Steven Camacho, a.k.a. "Spanky," a.k.a. "Spank," Defendants–Appellants,**

Angel Padilla, a.k.a. "Cuson,"
et al., Defendants.

No. 00–1288–cr(L).

United States Court of Appeals,
Second Circuit.

June 12, 2006.

Marshall A. Mintz (Joyce C. London, on the brief), Law Office of Joyce C. London, New York, NY, for Defendant–Appellant Rodriguez.

Joshua L. Dratel (Kristian K. Larsen, of counsel), Joshua L. Dratel, P.C., New York, NY, for Defendant–Appellant Camacho.

Sharon L. McCarthy, Assistant United States Attorney (Michael J. Garcia, United States Attorney for the Southern District of New York, Harry Sandick, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

Present JOHN M. WALKER, JR., Chief Judge, JON O. NEWMAN and SONIA SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

Defendants-appellants Jaime Rodriguez and Steven Camacho appeal from (1) judgments of the United States District Court for the Southern District of New York (Charles S. Haight, *Judge*) convicting them, after a jury trial, of violent crimes in aid of racketeering and of carrying and using a firearm in relation to a crime of violence, *see* 18 U.S.C. §§ 924(c), 1959(a)(1), (a)(5), and sentencing them; and (2) the district court's February 2, 2005 order vacating its prior order granting the defendants' motion for a new trial and denying the motion. In their briefs on appeal, defendants press seven general claims:

(1) the district court erred in admitting evidence from a prior trial of the defendants;

(2) the district court violated the Sixth Amendment by curtailing cross-examination of Douglas Welch;

(3) prosecutorial misconduct and comments in the government's closing arguments deprived the defendants of due process;

(4) the district court's failure to grant judicial immunity to Gregory Cherry deprived the defendants of due process;

(5) no rational trier of fact could have found the elements of the charged crimes proven beyond a reasonable doubt;

(6) a *Crosby* remand is required; and

(7) the district court abused its discretion in reconsidering and vacating its

order granting the defendants' motion 40 for a new trial.

We address these arguments seriatim.

■ First, we hold that the district court did not abuse its discretion in admitting the evidence from the so-called "Black Rain" trial. The evidence was relevant under Federal Rule of Evidence 401 because its existence made more probable the material fact that defendants had an affiliation with the C & C enterprise beginning with their dealing of drugs in C & C territory. And it was not an abuse of discretion for the district court to decline to bar the evidence under Federal Rule of Evidence 403 as unduly prejudicial, *see United States v. Awadallah*, 436 F.3d 125, 134 (2d Cir.2006) ("[The] district judge ... has broad discretion under Rule 403 to balance the probative value of evidence against the risk of prejudice."), especially given the district court's instructions to the jury to limit the import of this evidence.

■ Second, we reject the defendants' contention that their convictions must be reversed because the district court violated their Sixth Amendment rights in limiting cross-examination of Douglas Welch. Any error in limiting examination into some of Welch's specific acts of criminal conduct and malfeasance was harmless because substantial cross-examination was allowed, another witness (Albizu) corroborated Welch's account of the material events, and Welch's testimony, including that about his past crimes and nefarious activities, provided plentiful information for the jury to appraise his trustworthiness. *See Henry v. Speckard*, 22 F.3d 1209, 1215–16 (2d Cir.1994) (holding that harmless-error analysis applies to confrontation claims, identifying several factors relevant to the effect of a confrontation error, and finding a confrontation error harmless where the limitation was slight, where other evidence corroborated the witness's testimony, and where the jury had an adequate basis to assess credibility).

■ Third, we hold that no prosecutorial misconduct violated the defendants' due process rights. Defendants have not shown that Albizu committed perjury in testifying that the carjacking was on a night before the murders and that Cherry was absent on the night of the murders because they have not shown that Albizu deliberately testified falsely. "Differences in recollection alone do not add up to perjury." *United States v. Sanchez*, 969 F.2d 1409, 1415 (2d Cir.1992); *see also* Black's Law Dictionary 1160 (7th ed.1999) (defining perjury as deliberately making material false statements while under oath); 18 U.S.C. § 1623(a) (criminalizing the same). Thus, defendants' due process claims premised on the allegedly perjured testimony fail. *See United States v. McCarthy*, 271 F.3d 387, 399 (2d Cir.2001) (requiring the defendant to show, inter alia, that a witness actually committed perjury to make out such a claim). The defendants' contention that the government relied on "irreconcilable theories" also fails. There is no conflict in believing that both Padilla and Albizu were motivating forces behind the murders. A new trial is not warranted on these bases.

■ Neither will we disturb the convictions on account of improper closing arguments. The prosecution fairly used the term "lie" to comment upon the testimony of defense witnesses whose credibility was central to the defense. *See United States v. Peterson*, 808 F.2d 969, 977 (2d Cir.1987) ("Use of the words 'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory."). And defendants have not attempted to

show that any misrepresentation in recounting Nancy Melendez's testimony was deliberate, as is required to show prosecutorial impropriety. *See United States v. Richter*, 826 F.2d 206, 209 (2d Cir.1987) (observing the prosecutor's duty to "not deliberately misstate the evidence" in summation). Indeed, defendants cite not even a single case anywhere in their four-page argument on this point to establish that the prosecution's remarks were improper. As for the use of the "Black Rain" evidence in summation, including display of the guns, we find no impropriety justifying reversal. The prosecution referenced the evidence only twice, once simply reiterating the district court's proper instruction that the evidence should be used only as background evidence and, the second time, displaying the seized guns to rebut defense counsel's closing argument that defendant Rodriguez had no place in a web of violence. Both of these uses were proper.

■ We further hold that the alleged incidents of prosecutorial vouching for witnesses do not warrant reversal. Unlike the case cited by the defendants, in which the fact emphasized in summation was not in evidence, *United States v. Combs*, 379 F.3d 564, 574 (9th Cir.2004), the cooperation and nonprosecution agreements with Crespo, Albizu, and Welch were part of the record here and were properly cited in summation, *see United States v. Arroyo–Angulo*, 580 F.2d 1137, 1147 (2d Cir.1978) ("[T]he cooperation agreement was a matter which the jury could properly consider in relation to the witness' credibility."). And even if the government's alleged comment (to which defendants provide no citation) in closing arguments that it did not coach its witnesses was improper, we hold that it did not result in substantial prejudice to the defendants, much less show the "flagrant abuse" necessary to secure reversal where, as here, the defendants did

not object to the prosecutor's summation at trial. *See United States v. Rivera*, 22 F.3d 430, 437 (2d Cir.1994) (stating that the flagrant-abuse standard applies to unpreserved error).

■ Fourth, we reject the defendants' claim that due process required the district court to grant immunity to Gregory Cherry. Defendants have not shown that this case presents an exceptional circumstance in which "the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the fifth amendment." *United States v. Bahadar*, 954 F.2d 821, 826 (2d Cir.1992) (imposing this requirement). The number of witnesses immunized does not alone show prosecutorial overreaching. *Blissett v. Lefevre*, 924 F.2d 434, 442 (2d Cir.1991). And the purported prosecutorial wrongdoing argued by the defendants does not satisfy this requirement because it does not bear on Cherry's testimony or his anticipated invocation of the Fifth Amendment privilege: At the time of the government's 2002 transfer of Cherry to the MCC, Cherry had already indicated (in 1999) that he would invoke the Fifth Amendment privilege. Our examination of the reasons why the government decided to withhold immunity after considering whether to grant it—the perceived falsity of Cherry's statement resulting from, among other things, its conflict with his prior statements to government agents—only highlights that Cherry's invocation of the privilege "was not the result of a discriminatory use of immunity by the government, nor of any other prosecutorial overreaching ... [but rather] seem[s] to be solely the result of [Cherry's] own willingness to change his story." *Bahadar*, 954 F.2d at 826.

■ Fifth, we reject the defendants' claim that the evidence at trial was insuffi-

cient to prove the charged crimes. The defendants do not contend that Welch's and Albizu's testimony standing alone is insufficient to sustain the verdict; rather, they argue that no rational jury could have believed these prosecution witnesses over the defense witnesses. We disagree. The government offered at trial plausible explanations for the discrepancies in Welch's and Albizu's testimony, and a rational jury could find defense witness Luis Garcia's testimony internally contradictory, implausible, and therefore unbelievable. Because a rational jury could believe the prosecution witnesses and not the defense witnesses, we honor the jury's resolution of the weight of the evidence. *E.g., United States v. Matthews*, 20 F.3d 538, 548 (2d Cir.1994) ("The weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal.").

Sixth, the parties agree that a *Crosby* remand is warranted because the district court considered the United States Sentencing Guidelines to be mandatory. Thus, we remand for a decision whether to resentence. *See Crosby*, 397 F.3d at 119.

Seventh, we hold that the district court did not err in finding that the defendants failed to meet their burden of showing that "corroborating circumstances clearly indicate the trustworthiness of [Cherry's] statement," Fed.R.Evid. 804(b)(3), as required to render Cherry's hearsay statement admissible and win their new-trial motion.[1] In making this determination, Judge Haight considered Thomas's affidavit, taken as true, evidence of Cherry's statements to London and police, testimony at trial, Jose Melendez's testimony, and other circumstances. We find no error in Judge Haight's considering this evidence. Defendants argue that the district court could not have changed its decision about

the corroboration of Cherry's statement based upon Melendez's testimony, which was simply "countervailing evidence" about trustworthiness. That position contradicts the settled practice in this circuit of considering evidence both supporting and undermining reliability in deciding whether the corroboration clause of Rule 804(b)(3) is met. *See United States v. Doyle*, 130 F.3d 523, 542–44 (2d Cir.1997) (holding that the declarant's changes in his story permissibly overpowered other indicia of trustworthiness); *Bahadar*, 954 F.2d at 829 (considering the declarant's repeated changes in his story); *United States v. Salvador*, 820 F.2d 558, 562 (2d Cir.1987) (holding that evidence undermining reliability detracts from the clarity of the corroboration); *United States v. Ford*, 771 F.2d 60, 63 (2d Cir.1985) (considering evidence contradicting the declarant's statement in upholding the statement's exclusion); *United States v. Beltempo*, 675 F.2d 472, 480 (2d Cir.1982) (same). Thus, notwithstanding defendants' citation to opinions of other courts, it is plain that the district court did not err in considering what defendants call "contrary government evidence" (Melendez's testimony) in deciding whether Cherry's statement was sufficiently corroborated.

Of course, the district judge could not permissibly have found Thomas's proposed testimony inadmissible because the judge did not believe Thomas's account in light of Melendez's testimony. *See United States v. Casamento*, 887 F.2d 1141, 1170 (2d Cir.1989) (holding that a court should not assess the credibility of the witness who will give the disputed testimony). But the district court recognized this principle, citing *Casamento* and noting that Melendez's and Thomas's accounts can coexist: "Melendez did not testify that Cherry told him

---

1. We hold that the district court had jurisdiction over the Rule 33 motion for the reasons

expressed by the district court in its October 1, 2001 opinion.

he had never made the declarations in question to Thomas."

The district court exercised its discretion in weighing the circumstances, and we find no abuse of discretion in its finding that corroborating circumstances did not clearly indicate the trustworthiness of Cherry's statement. *See Salvador,* 820 F.2d at 562 (abuse-of-discretion review applies). The district judge's findings, including its statement that Melendez was confined to a special housing unit at "the pertinent time," are supported by the record.

We also note that Judge Haight's final order on reconsideration did not rely upon the trustworthiness of the declarant, Cherry, but rather upon the trustworthiness of Cherry's statements in finding the statements to be inadmissible. This renders irrelevant the defendants' meritless argument that a declarant's credibility may not be assessed in determining admissibility. *See Doyle,* 130 F.3d at 544 (explicitly reaffirming our position that declarant trustworthiness is assessed).

We reject the defendants' argument, made without citation to any legal authority, that this court's rulings could somehow establish an abuse of discretion by the district court. And finally, we reject the defendants' argument that there was an abuse of process in producing Cherry to the MCC such that the district court could not have considered Melendez's testimony because this argument is meritless.

For the foregoing reasons, the district court's order denying the defendants' motion for a new trial is **AFFIRMED,** the judgments are **AFFIRMED** as to the convictions, and the case is **REMANDED** pursuant to *United States v. Crosby,* 397 F.3d at 119, for the limited purpose of affording the district court an opportunity to consider whether to resentence the defendants.